[802 NE2d 616, 770 NYS2d 277]

County of Nassau, Appellant, v Michaele K. Canavan, Respondent.

Argued October 21, 2003; decided November 24, 2003

**POINTS OF COUNSEL**

*Lorna B. Goodman, County Attorney,* Mineola (*Dennis J. Saffran* and *David B. Goldin* of counsel), for appellant. I. Section 8-7.0 (g) of the Nassau County Administrative Code is not unconstitutionally vague, either facially or as applied to driving while intoxicated offenders. Indeed, the vagueness doctrine does not apply at all, because section 8-7.0 (g) creates no new prohibitions or rules of conduct, but merely provides another sanction for existing crimes. (*People v Nelson,* 69 NY2d 302; *City of Chicago v Morales,* 527 US 41; *Kolender v Lawson,* 461 US 352; *Village of Hoffman Estates v Flipside, Hoffman Estates, Inc.,* 455 US 489; *Smith v Goguen,* 415 US 566; *Ulster Home Care v Vacco,* 96 NY2d 505; *People v Cruz,* 48 NY2d 419, 446 US 901; *Connally v General Constr. Co.,* 269 US 385; *Coates v City of Cincinnati,* 402 US 611; *Lanzetta v New Jersey,* 306 US 451.) II. The seizure and forfeiture of defendant's car under Nassau County Administrative Code § 8-7.0 (g) following her arrest for driving while intoxicated was not an excessive fine in violation of the Federal or State Constitutions. (*Grinberg v Safir,* 181 Misc 2d 444, 266 AD2d 43; *United States v Bajakajian,* 524 US 321; *Solem v Helm,* 463 US 277; *Austin v United States,* 509 US 602; *United States v Myers,* 21 F3d 826; *United States v Chandler,* 36 F3d 358, 514 US 1082; *United States v Milbrand,* 58 F3d 841; *Matter of Attorney-General of State of N.Y. v One Green 1993 Four Door Chrysler,* 217 AD2d 342; *United States v Certain Real Prop. & Premises Known as 38 Whalers Cove Dr.,* 954 F2d 29, *cert denied sub nom. Levin v United States,* 506 US 815; *Rochin v California,* 342 US 165.) III. Defendant was not entitled to a hearing prior to the seizure of her car incident to her driving while intoxicated arrest. Nor did the seizure and forfeiture of her car in any other way violate her right to due process. (*People v Saffore,* 18 NY2d 101; *People v P.J. Video,* 68 NY2d 296; *Calero-Toledo v Pearson Yacht Leasing Co.,* 416 US 663, 417 US 977; *Grinberg v Safir,* 181 Misc 2d 444; *United States v James Daniel Good Real Prop.,* 510 US 43; *Mathews v Eldridge,* 424 US 319; *Krimstock v Kelly,* 306 F3d 40; *Fuentes v Shevin,* 407 US 67.)

*Michael A. Montesano, P.C.,* Glen Cove (*Michael A. Montesano* and *Theresa Vazquez* of counsel), for respondent. I. The Appellate Division was correct when it held that the Nassau County Administrative Code violates due process in that it is vague and does not provide the public with sufficient notice of what offending conduct will result in the forfeiture. (*United States v*

*Schneiderman,* 968 F2d 1564, 507 US 921; *Grayned v City of Rockford,* 408 US 104; *Giaccio v State of Pennsylvania,* 382 US 399; *Bennis v Michigan,* 516 US 442.) II. The Appellate Division was correct when it held that the Nassau County Administrative Code violates due process in that it is vague. The provision fails to provide safeguards for the interim deprivation between the time of the warrantless seizure and the final disposition and, thus, it is constitutionally infirm. (*Lee v Thornton,* 538 F2d 27; *Krimstock v Kelly,* 306 F3d 40; *United States v James Daniel Good Real Prop.,* 510 US 43.) III. Due process under the Fourteenth Amendment of the United States Constitution and/or its parallel in the New York State Constitution, article I (§ 6), was violated by the county's application of the Administrative Code provision. (*Krimstock v Kelly,* 306 F3d 40; *Mathews v Eldridge,* 424 US 319; *Joint Anti-Fascist Refugee Comm. v McGrath,* 341 US 123; *Tedeschi v Blackwood,* 410 F Supp 34; *Lee v Thornton,* 538 F2d 27.) IV. Protections afforded by due process, under the Fourteenth Amendment of the United States Constitution and/or its parallel in the New York State Constitution, article I (§ 6), are violated by the inconsistent results in the court's application of the forfeiture laws. (*Bennis v Michigan,* 516 US 442; *Pringle v Wolfe,* 88 NY2d 426.) V. Civil forfeiture of a vehicle as applied under the Nassau County Administrative Code violates the Eighth Amendment and/or its parallel, article I (§ 5) of the New York State Constitution. (*Austin v United States,* 509 US 602; *Grinberg v Safir,* 181 Misc 2d 444; *United States v Bajakajian,* 524 US 321; *United States v Milbrand,* 58 F3d 841; *Matter of Attorney-General of State of N.Y. v One Green 1993 Four Door Chrysler,* 217 AD2d 342.)

### OPINION OF THE COURT

Chief Judge KAYE.

We are asked to consider the validity of Nassau County's civil forfeiture statute, pursuant to which defendant's car was seized.

On September 6, 2000, defendant was arrested and charged with driving while intoxicated, speeding and failure to signal. The 1995 Saturn automobile she had been driving, valued at $6,500, was seized incident to her arrest, and defendant was given notice of the possibility that the car might be forfeited to the County of Nassau. The car was impounded, where it remained throughout the pendency of defendant's criminal case.

In November 2000, defendant pleaded guilty to the traffic infractions of speeding and driving while impaired by alcohol

and was sentenced to a $400 fine, completion of a drinking-driver program and suspension of her license. The following month, after defendant demanded the return of her car, the County commenced a civil forfeiture action under Nassau County Administrative Code § 8-7.0 (g) (3). Supreme Court granted summary judgment to the County and the Appellate Division reversed, holding that the ordinance under which defendant's car had been seized was unconstitutionally vague.

We note at the outset that, when implemented pursuant to a carefully drafted statute, civil forfeiture of automobiles can be an extremely effective tool in the battle against drunk driving. In the 34-month period following Nassau County's institution of a program in which the County routinely sought the forfeiture of automobiles used for intoxicated driving, drunk driving accidents decreased by 26%. Driving while intoxicated poses a grave risk of injury or death to innocent motorists and pedestrians. Nevertheless, because we conclude that the ordinance adopted by Nassau County did not satisfy constitutional requirements, we now affirm the order of the Appellate Division, which reached the same conclusion, albeit for different reasons.

## I.

Administrative Code § 8-7.0 (g) (3) provides:

> "The County of Nassau may commence a civil action for forfeiture to the County of Nassau of the proceeds of a crime, substituted proceeds of a crime or instrumentality of a crime seized incident to an arrest for a misdemeanor crime or petty offense or upon a conviction for such misdemeanor crime or petty offense against any person having an interest in such property."

The ordinance defines an "instrumentality of a crime" as "any property, other than real property and any buildings, fixtures, appurtenances, and improvements thereon, whose use contributes directly and materially to the commission of any offense" (Administrative Code § 8-7.0 [g] [1] [d]).

The prohibition against vagueness mandates that a criminal statute provide fair notice of the conduct that is proscribed and that it not permit or encourage arbitrary and discriminatory enforcement (see e.g. People v Bright, 71 NY2d 376, 382 [1988]). Of primary importance is "the requirement that a legislature establish minimal guidelines to govern law enforcement" (Kolender v Lawson, 461 US 352, 358 [1983] [citation omitted]).

■ Since the Nassau County ordinance makes clear what conduct may lead to forfeiture of an instrumentality of a crime—the commission of any misdemeanor or petty offense, including any traffic infraction, all of which are particularly defined and all of which provide fair notice of the conduct that is proscribed—the Appellate Division erred when it concluded that the statute was unconstitutionally vague. The ordinance "may be stringent and harsh but it is not vague. . . . The discretion left to enforcing officers is not one of defining the offense. It is merely that of matching the measure of the discipline to the specific case" (*Barsky v Board of Regents of Univ.*, 347 US 442, 448 [1954], *affg* 305 NY 89 [1953]).

Misdemeanors are defined in the Penal Law, and petty offenses, in the Criminal Procedure Law.[1] Defendant's automobile was seized upon an arrest for an offense clearly defined by statute. We therefore hold that the ordinance is not unconstitutionally vague.

## II.

Both the Federal and State Constitutions prohibit the imposition of excessive fines (*see* US Const 8th Amend; NY Const, art I, § 5). The Excessive Fines Clause thus "limits the government's power to extract payments, whether in cash or in kind, as '*punishment* for some offense' " (*Austin v United States*, 509 US 602, 609-610 [1993] [citation omitted]). Forfeitures—payments in kind—are "fines" if they constitute punishment for an offense (*see United States v Bajakajian*, 524 US 321, 328 [1998]). As the County concedes, the civil forfeiture at issue here serves,

---

1. A petty offense "means a violation or a traffic infraction" (CPL 1.20 [39]). A traffic infraction, in turn, is defined by Penal Law § 10.00 (2) as any offense defined as "traffic infraction" by section 155 of the Vehicle and Traffic Law, which includes "[t]he violation of any provision of [the Vehicle and Traffic Law] except articles forty-seven and forty-eight [concerning registration of snowmobiles and vessels], or of any law, ordinance, order, rule or regulation regulating traffic which is not declared by [the Vehicle and Traffic Law] or other law of this state to be a misdemeanor or a felony." A violation "means an offense, other than a 'traffic infraction,' for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed" (Penal Law § 10.00 [3]). A misdemeanor is "an offense, other than a 'traffic infraction,' for which a sentence to a term of imprisonment in excess of fifteen days may be imposed, but for which a sentence to a term of imprisonment in excess of one year cannot be imposed" (Penal Law § 10.00 [4]). Finally, an "offense" is "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same" (Penal Law § 10.00 [1]).

at least in part, deterrent and retributive purposes and is thus punitive and subject to the Excessive Fines Clause (*see Austin*, 509 US at 619-622; *Bajakajian*, 524 US at 328-329).

■ Inasmuch as a punitive forfeiture of an instrumentality of a crime "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense" (*Bajakajian*, 524 US at 334), we reject defendant's claim that the forfeiture of her car constituted an excessive fine. In determining gross disproportionality, we consider such factors as the seriousness of the offense, the severity of the harm caused and of the potential harm had the defendant not been caught, the relative value of the forfeited property and the maximum punishment to which defendant could have been subject for the crimes charged, and the economic circumstances of the defendant.

On the facts of this case, we conclude that the forfeiture of defendant's car was not at all disproportionate to the gravity of her offense. The offense with which she was originally charged—driving while intoxicated—is a very serious crime. Grievous harm to innocent victims could have been caused by defendant's driving with a blood alcohol level of .15% while speeding and weaving in and out of lanes, had she not been caught and stopped. Given the gravity of the crime of drunk driving, it is difficult to imagine that forfeiture of an automobile for such a crime could ever be excessive. Surely it was not so here.

We note, however, that since, pursuant to the ordinance, *every* conceivable offense—however minor—may be subject to forfeiture, limited only by the discretion of county officials in determining whether to invoke it, the potential for disproportionality is great. Moreover, without clear notice to the public that a particular punishment may be imposed for a particular offense, the deterrent effect of the penalty may be lost. In any event, the forfeiture of an automobile for a minor traffic infraction such as driving with a broken taillight or failing to signal would surely be "grossly disproportional to the gravity of a defendant's offense" (*Bajakajian*, 524 US at 334).

■ Although the County has, as a matter of policy, decided to focus its enforcement efforts on drunk driving arrests, the ordinance by its terms permits forfeiture for *any* offense. Moreover, the County advises us that the challenged Code provision is utilized to seek forfeiture in non-drunk driving cases as well. The statute itself is thus devoid of standards as to which petty

offenses will result in the implementation of the forfeiture provision, thereby enhancing the opportunity for disproportionate enforcement. Indeed, the County's unilateral decision to invoke the ordinance's nearly limitless application in certain instances and not in others highlights the infirmity inherent in the statute itself. By encompassing many minor and technical violations that could not justify forfeiture, the ordinance, as enacted, risks violation of the Excessive Fines Clause.[2]

## III.

Defendant contends that by not affording her a hearing prior to the initial seizure of her car, the Administrative Code provision deprived her of property without due process of law. While we disagree that due process mandates a hearing *prior* to the initial seizure, we conclude that a prompt post-seizure hearing is required in all cases.

As a general rule, "individuals must receive notice and an opportunity to be heard before the Government deprives them of property" (*United States v James Daniel Good Real Prop.*, 510 US 43, 48 [1993]). In limited circumstances, however,

> "immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible. Such circumstances are those in which 'the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance' " (*Calero-Toledo v Pearson Yacht Leasing Co.*, 416 US 663, 678 [1974], quoting *Fuentes v Shevin*, 407 US 67, 91 [1972]).

When the forfeited property consists of a vehicle, the property's mobility creates "a special need for very prompt action that justifie[s] the postponement of notice and hearing until after

---

2. During the course of this appeal, the County added a provision to its Administrative Code explicitly making civil forfeiture available as a sanction for alcohol-related driving offenses. We do not pass upon the amended statute, which also continues the provision now under review.

the seizure" (*James Daniel Good*, 510 US at 52 [citation and internal quotation marks omitted]).

In the context of lawful arrests for driving while intoxicated, immediate seizure by the police of a defendant's car—the instrumentality of the crime of drunk driving—helps to secure important public and governmental interests in ensuring both safety on the roads and the enforceability of any subsequent forfeiture order. Here, inasmuch as she had been arrested for driving while intoxicated, defendant was both legally and physically incapable of driving. No one else was present with her in the car. In addition, an immediate seizure of the automobile—which could easily be removed to another jurisdiction, destroyed or concealed—was necessary to enable the County to assert jurisdiction over it in anticipation of a later forfeiture proceeding. A pre-seizure hearing was therefore not required.

After the County took initial possession of the vehicle, however, due process required that a prompt retention hearing be provided. Pursuant to the Nassau County Administrative Code, a civil action seeking forfeiture need not be commenced until 120 days have passed after the initial seizure (*see* Administrative Code § 8-7.0 [g] [5]). Once commenced, the action may not be finally resolved for many months or years, particularly because upon motion of either the defendant or the County, the action must be stayed during the pendency of the underlying criminal case (*see id.*).

In *Mathews v Eldridge* (424 US 319, 335 [1976]), the Supreme Court set forth three factors to weigh in determining whether due process is satisfied when the government seeks to maintain possession of property before a final judgment is rendered: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the probable value of other procedural safeguards; and (3) the government's interest. "These factors should be used to evaluate the adequacy of process offered in post-seizure, pre-judgment deprivations of property in civil forfeiture proceedings" (*Krimstock v Kelly*, 306 F3d 40, 60 [2d Cir 2002]; *see also Morgenthau v Citisource, Inc.*, 68 NY2d 211, 221 [1986]).

A balancing of these factors mandates that post-seizure hearings be routinely provided. Especially in light of the potential length of the deprivation before a final determination on the merits, the private interest affected by the deprivation of an automobile may be significant. When cars are owned by others or shared among household members, for example, seizure may

affect not only a culpable defendant, but also other innocent parties. Moreover, automobiles are often an essential form of transportation and, in some cases, critical to life necessities, earning a livelihood and obtaining an education. Nor is the importance of defendants' possessory interest diminished by the likelihood that they might lose and the County might eventually prevail in forfeiture proceedings. "Fair procedures are not confined to the innocent. The question before us is the legality of the seizure, not the strength of the Government's case" (*James Daniel Good*, 510 US at 62).

A prompt post-seizure hearing will minimize the risk of erroneous deprivation. Of course, it may well be that the County will be able to establish at such hearings its entitlement to seize and retain the vehicles of most defendants arrested without a warrant for driving while intoxicated. The right to be heard, however, "does not depend upon an advance showing that one will surely prevail at the hearing" (*Fuentes*, 407 US at 87). Moreover, greater procedural safeguards are of particular importance where, as here, "the Government has a direct pecuniary interest in the outcome of the proceeding" (*James Daniel Good*, 510 US at 56).

In addition, even if the County is able to show easily that it had probable cause to believe that the driver of the seized vehicle had been driving while intoxicated, the risk of erroneous deprivation is heightened when the driver is not the owner or sole user of the seized vehicle. Although the Nassau County Police Department has adopted procedures whereby it attempts to limit forfeitures to vehicles not subject to a defense of innocent ownership, the statute itself contains no such limitation. "A statute that authorizes the police to seize property to which the government has not established a legal right or claim, and that on its face contains no limitation of forfeiture liability for innocent owners, raises substantial constitutional concerns" (*Krimstock*, 306 F3d at 57).

The absence of such a limitation in the challenged Code provision therefore renders the ordinance, as written, unconstitutional on that ground as well (*cf.* CPLR 1311 [3] [b] [iv] [state forfeiture statute applicable to felonies requires the claiming authority to prove by a preponderance of the evidence that an owner who is not a criminal defendant either "knew that the instrumentality was or would be used in the commission of a crime or . . . knowingly obtained his or her interest in the instrumentality to avoid forfeiture"]). In any event, even were

the statute to limit forfeiture liability to seizures of automobiles not involving innocent owners, a hearing would be required to ensure that such innocent owners are not deprived for months or years of cars ultimately proved not to be subject to forfeiture.

The final factor to consider in determining the process that is due is the government's interest in retaining cars post-seizure and pre-judgment. Of course, retention of an intoxicated driver's car pending resolution of the forfeiture action advances the public interest in preventing the vehicle from being used for repeated drunk driving. Nevertheless, while retention of a car indeed prevents a defendant from again driving that particular car drunk, it does little to prevent the person from driving another car drunk. The County asserts, though, that—while not a perfect solution as to all defendants—retention of seized vehicles will at least prevent *some* defendants, who have no access to other cars, from driving while intoxicated. We agree that retention is a rational means of protecting the public from an increased risk of drunk drivers. We hold only that due process requires that the County establish its right to such justifiable retention after affording the defendant an opportunity to be heard.

The County also has an interest in preventing the vehicle from being sold or destroyed before judgment is rendered in a future forfeiture proceeding. Continued retention of the car throughout the pendency of the forfeiture action, however, is not the only means available to accomplish this goal. The County could, for example, require that a defendant post a bond or seek a preliminary injunction or temporary restraining order prohibiting the sale or destruction of the property.

We therefore conclude, after balancing these considerations, that due process requires that a prompt post-seizure retention hearing before a neutral magistrate be afforded, with adequate notice, to all defendants whose cars are seized and held for possible forfeiture. At such a hearing, the County must establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action,[3] and that retention is necessary to preserve the ve-

---

**3.** "[D]ue process is afforded only by the kinds of notice and hearing that are aimed at establishing the validity, or at least the probable validity, of the underlying claim" against the defendant before he or she can be deprived of property (*Fuentes*, 407 US at 97 [citations and internal quotation marks omitted]).

hicle from destruction or sale during the pendency of the proceeding (*see Krimstock*, 306 F3d at 67).

We note that although no provision for post-seizure hearings is contained in the challenged ordinance, Nassau County has nevertheless been affording such hearings to defendants who affirmatively request them. In *County of Nassau v Bigler* (2001 NY Slip Op 50144[U] [Sup Ct, Nassau County, Roberto, J.]), Nassau County Supreme Court held, as a matter of due process, that if a defendant affirmatively challenged the adequacy of a forfeiture action, the County could not retain a seized vehicle without moving for and obtaining either summary judgment or a provisional order of attachment pending the conclusion of the action. The court held, however, that, in the absence of any such challenge by the owner, the County had no burden to prove entitlement to the retention of the vehicle. In the wake of *Bigler*, the County has been routinely affording prompt judicial review to defendants who challenge the pre-conviction seizures of their vehicles.[4] We hold today that due process requires that prompt post-seizure hearings be provided to all defendants whose vehicles are seized and held for forfeiture, not merely those who request them.

Finally, we recognize that the County—in adding provisions to its ordinance during the course of this appeal—has already taken steps to address some of the issues we identify here today. Nevertheless, because the statute suffers from a variety of procedural defects, the County would perhaps be well served by rewriting the ordinance—originally enacted in 1939—in its entirety.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order affirmed, with costs.

---

4. In its recent amendment to the forfeiture ordinance, the County codified the rule imposed in *Bigler*. Specifically, the ordinance now provides that a person from whom property is seized may, within 15 days after mandatory notification that the property is subject to forfeiture, "request review of the probable validity of the continued retention of the property pending the completion of the civil forfeiture proceeding" (Administrative Code § 8-7.0 [g] [a]). Within 15 days after receipt of such a request for review, the Police Department must either return the property or apply to the court for a prompt hearing (Administrative Code § 8-7.0 [g] [4] [b]).