THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ONE 2000 GMC, VIN 3GNFK16T2YG169852, Defendant (Daniel Durham, Claimant-Appellant).

Second District   No. 2—04—0744

Opinion filed May 27, 2005.

Salvatore C. Miglore, of Salvatore C. Miglore & Associates, P.C., of Wheaton, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Stephen E. Norris and Trent M. Marshall, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Claimant, Daniel Durham, appeals from the judgment of the circuit court of Du Page County in favor of the State on its complaint for the forfeiture of a GMC vehicle owned by Durham. Durham contends that the forfeiture violates the prohibition against excessive fines set forth in the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). Durham also contends that the State failed to comply with certain procedural requirements for forfeiture. We affirm.

On October 18, 2002, the State filed its complaint for the forfeiture of Durham's vehicle. The complaint sought forfeiture solely on the basis that the vehicle had been used in the commission of the offense of driving with a suspended license (625 ILCS 5/6—303(a), (g) (West 2002)). The vehicle was seized from Durham after he was arrested for that offense and for driving under the influence of alcohol (DUI) (625 ILCS 5/11—501 (West 2002)). Durham subsequently pleaded guilty to both offenses. At the time of his arrest, a summary suspension of Durham's driver's license was in effect pursuant to section 11—501.1 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—501.1 (West 2002)). Pursuant to a judicial driving permit, Durham was allowed to drive between 5:30 a.m. and 7:30 p.m., but his arrest occurred at 12:54 a.m. The record establishes that the vehicle was worth $28,000. Durham filed an answer to the State's complaint, and following a hearing, the trial court ordered the forfeiture of the vehicle. Durham filed a timely notice of appeal.

■ Section 36—1 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/36—1 (West 2002)) provides, in pertinent part, that "[a]ny

vessel, vehicle or aircraft used with the knowledge and consent of the owner in the commission of, or in the attempt to commit \*\*\* (g) an offense described in subsection (g) of Section 6—303 of the Illinois Vehicle Code[ ] may be seized and delivered forthwith to the sheriff of the county of seizure." Section 36—2 of the Criminal Code (720 ILCS 5/36—2 (West 2002)) authorizes the State's Attorney of the county in which the seizure occurred to file a complaint seeking forfeiture of the seized vehicle. Section 6—303(a) of the Vehicle Code (625 ILCS 5/6—303(a) (West 2002)) provides that a person commits a Class A misdemeanor by driving on any highway when his or her license has been suspended. Section 6—303(g) provides, in pertinent part, that "[t]he motor vehicle used in a violation of this Section is subject to seizure and forfeiture as provided in Sections 36—1 and 36—2 of the Criminal Code of 1961 if the person's driving privilege was \*\*\* suspended \*\*\* as a result of a summary suspension [under section 11—501.1 of the Vehicle Code]." 625 ILCS 5/6—303(g) (West 2002).

█ The record shows that the statutory criteria for seizure and forfeiture have been met, but Durham initially contends that the forfeiture nonetheless violates the eighth amendment to the United States Constitution, which prohibits, among other things, the imposition of "excessive fines" (U.S. Const., amend. VIII). This prohibition "limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.' " (Emphasis in original.) *Austin v. United States*, 509 U.S. 602, 609-10, 125 L. Ed. 2d 488, 497, 113 S. Ct. 2801, 2805 (1993), quoting *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 106 L. Ed. 2d 219, 232, 109 S. Ct. 2909, 2915 (1989). Civil forfeiture proceedings serve, at least in part, to punish the owner of the property subject to forfeiture and are therefore subject to the excessive fines clause even though the forfeiture may also serve a remedial purpose. *Austin*, 509 U.S. at 618, 621-22, 125 L. Ed. 2d at 503, 505-06, 113 S. Ct. at 2810, 2812. However, a punitive forfeiture violates the excessive fines clause if it is grossly disproportional to the gravity of the offense for which it is forfeited. *United States v. Bajakajian*, 524 U.S. 321, 334, 141 L. Ed. 2d 314, 329, 118 S. Ct. 2028, 2036 (1998). Application of the constitutional standard for determining excessiveness to a given set of facts presents a question of law subject to *de novo* review. *Bajakajian*, 524 U.S. at 336 n.10, 141 L. Ed. 2d at 331 n.10, 118 S. Ct. at 2037 n.10.

In *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78 (1994), our supreme court adopted a multifactor analysis of the eighth amendment excessiveness issue. *1989 Ford F350 Truck*, 162 Ill. 2d at 89. Specifically, the court held that the determination of excessiveness requires consideration of the following factors:

" '(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.' " *1989 Ford F350 Truck*, 162 Ill. 2d at 90, quoting *United States v. Real Property Located at 6625 Zumirez Drive*, 845 F. Supp. 725, 732 (C.D. Cal. 1994).

The court noted, however, that these factors are not exclusive. *1989 Ford F350 Truck*, 162 Ill. 2d at 90.

A divided panel of this court elaborated on these factors in *People ex rel. Waller v. 1996 Saturn, VIN 1G82H5282TZ113572*, 298 Ill. App. 3d 464 (1998), in which the State secured the forfeiture of a vehicle on the basis that it had been used in the commission of burglaries involving the theft of about $100 in cash and other property. In affirming the forfeiture, the majority indicated that the value of the seized property is germane to assessing the harshness of the penalty, but noted that "a court must consider not only the monetary value of the property but also the intangible value of the property." *1996 Saturn*, 298 Ill. App. 3d at 472. Forfeiture of personal property is less harsh than forfeiture of real estate. *1996 Saturn*, 298 Ill. App. 3d at 472. The majority specifically rejected the claimant's argument that the court should simply compare the value of the forfeited property with the value of the stolen property. *1996 Saturn*, 298 Ill. App. 3d at 471. As far as the gravity of the offense is concerned, the majority stated that relevant factors include whether the crime was one of violence; whether the offense was a completed crime (as opposed to an attempted one); whether the conduct involved was intentional or negligent; and whether the claimant was convicted, acquitted, or never charged with a criminal offense. *1996 Saturn*, 298 Ill. App. 3d at 471-72. The majority explained that comparing the maximum fine for the offense with the value of the seized property is not a proper way to gauge excessiveness, although the maximum fine for the offense is relevant to determining the gravity of the offense. *1996 Saturn*, 298 Ill. App. 3d at 471.

Mindful of these principles, we cannot say that the forfeiture here was grossly disproportional to Durham's offense. We first consider the inherent gravity of Durham's offense: driving with a suspended license. Although Durham argues that his offense was only a misdemeanor, it is important to recognize that sections 36—1 and 36—2 do not authorize the seizure and forfeiture of vehicles used in all cases of driving with a suspended license. Rather, in such cases, seizure and forfeiture are authorized only where (as here) a vehicle owner's driving privileges have previously been *summarily* suspended

under section 11—501.1 of the Vehicle Code. Summary suspension is imposed where a motorist who has been arrested for DUI fails or refuses to submit to testing of the alcohol level of his or her blood, breath, or urine. 625 ILCS 5/11—501.1 (West 2002). Thus, the offense in question must be considered with reference to the objective of keeping alcohol-impaired drivers off the road. The summary suspension law "reflects the concern of the legislature over the threat to the public imposed by drivers impaired by alcohol or other drugs and serves to deter and remove problem drivers from the highways, thus making the highways safer." *People v. Bailey*, 243 Ill. App. 3d 871, 873 (1993). Driving in violation of a summary suspension seriously undermines this important public policy, subverting legislative efforts to keep roads safe. Viewed in this light, Durham's offense is comparable in severity to DUI. In its basic form, DUI is a Class A misdemeanor (625 ILCS 5/11—501(c) (West 2002)), as is Durham's offense. Indeed, driving with a license that has been summarily suspended carries mandatory jail time or community service. 625 ILCS 5/6—303(c)(4) (West 2002). First-time DUI offenders do not face this mandatory penalty.

There can be no question that the presence of intoxicated motorists on Illinois roads is a serious threat to public safety. Society's decreasing tolerance in recent years for impaired drivers is reflected in legislation lowering the legal limit for a driver's blood-alcohol level (Pub. Act 90—43, eff. July 2, 1997) and increasing penalties for repeat offenders (*e.g.*, Pub. Act 92—248, eff. August 3, 2001). As noted, whether the crime was one of violence is a consideration in determining its gravity. It is true that Durham's crime was not one of violence, but the public safety considerations we have identified exacerbate the offense and arguably set it apart from other nonviolent offenses. Moreover, although Durham's offense was a misdemeanor rather than a felony, it is in the most serious class of misdemeanors (Class A) and carries potentially severe penalties—any term of imprisonment of less than a year (730 ILCS 5/5—8—3(a)(1) (West 2002)) and a fine of up to $2,500 (730 ILCS 5/5—9—1(a)(2) (West 2002)). Moreover, as noted above, Durham's offense carries mandatory jail time or community service.

We note that courts in other jurisdictions have upheld vehicle forfeitures based on DUI. See Annotation, *Validity, Construction, and Application of Statute Permitting Forfeiture of Motor Vehicle for Operation of Vehicle While Intoxicated*, 89 A.L.R. 5th 539, § 4 (2001). "[W]hen implemented pursuant to a carefully drafted statute, civil forfeiture of automobiles can be an extremely effective tool in the battle against drunk driving." *County of Nassau v. Canavan*, 1 N.Y.3d

134, 138, 802 N.E.2d 616, 620, 770 N.Y.S.2d 277, 281 (2003). Because we view DUI and driving with a license that has been summarily suspended as comparably serious offenses, DUI forfeiture cases are germane to our decision.

In assessing the gravity of the offense, other relevant factors discussed in *1996 Saturn* are whether the vehicle owner committed a completed crime (as opposed to a mere attempt); whether the conduct involved was intentional or negligent; and whether the claimant was convicted, acquitted, or never charged with a criminal offense. First, Durham committed a completed crime. Second, although the offense of driving with a suspended license does not involve a culpable mental state (*People v. Strode*, 13 Ill. App. 3d 697, 698 (1973)), it is not a crime that will ordinarily be the result of negligence. Third, Durham was criminally prosecuted and pleaded guilty to the conduct underlying the forfeiture.

Having considered the inherent gravity of the offense, we must weigh that consideration against the harshness of the penalty—the forfeiture of a $28,000 vehicle. Even though only personal property is involved, this is undeniably a severe penalty, especially inasmuch as the record shows that Durham is a person of limited means and assets. All the same, the constitution forbids only *grossly* disproportional penalties. In view of the inherent gravity of Durham's offense, we cannot say the forfeiture rises to the level of gross disproportionality.

Moreover, in evaluating the harshness of the penalty, we believe it is appropriate to consider the remedial aspects of the forfeiture. We recognize, as stated earlier, that the existence of a remedial purpose does not remove a fine from the ambit of the eighth amendment. See *Austin*, 509 U.S. at 621-22, 125 L. Ed. 2d at 505-06, 113 S. Ct. at 2812. However, we are aware of no authority that precludes consideration of that remedial purpose when determining excessiveness. Durham has shown himself to be without sufficient inclination or discipline to comply with the suspension of his driving privileges. Hopefully, taking away his vehicle will more effectively accomplish what taking away his driving privileges did not: keeping him off the road. In our view, this significant remedial feature of the forfeiture militates against a finding of excessiveness.

The second and third factors in the analysis articulated by our supreme court in *1989 Ford F350 Truck* are whether the property was an integral part of the commission of the crime and whether the criminal activity involving the property was extensive in terms of time and/or spatial use. The second factor clearly favors forfeiture. With respect to the third factor, however, the record is unilluminating: it is not clear how long or how far Durham drove the vehicle. Accordingly, the third factor carries little weight either for or against forfeiture.

In view of the foregoing, we conclude that the forfeiture of Durham's vehicle did not violate the excessive fines clause. In reaching this conclusion, we must emphasize the deference accorded to the General Assembly in determining penalties for criminal conduct. The eighth amendment standard is not one of *strict* proportionality. Rather, the appropriate inquiry is whether the forfeiture is *grossly* disproportional to the gravity of the offense. As previously stated, we do not believe the forfeiture rises to that level.

■ Durham next contends that the forfeiture must be reversed because of violations of certain procedural requirements. Section 36—1 provides that a vehicle used in the commission of one of the enumerated offenses "may be seized and delivered forthwith to the sheriff of the county of seizure" and that, within 15 days of delivery, the sheriff shall give notice of the seizure to all parties with a record interest in the vehicle. 720 ILCS 5/36—1 (West 2002). Durham argues that the record does not show compliance with these requirements. The argument is meritless. First of all, the State specifically alleged in its complaint that four days after the seizure, the Du Page County sheriff sent notice thereof by certified mail to "persons having an interest therein." In his answer, Durham admitted the truth of this allegation. Accordingly, the only matter that might be at issue is whether the vehicle was delivered to the sheriff, and there is nothing in the record to suggest that it was not properly delivered.

Assuming, *arguendo*, that lack of proper delivery to the sheriff is a defense against forfeiture, the question arises as to who bears the burden of establishing delivery or nondelivery. Durham apparently assumes that proof of delivery to the sheriff is part of the State's *prima facie* case for forfeiture, but he cites no authority and advances no argument supporting the assumption. " 'Mere contentions, without argument or citations of authority, do not merit consideration on appeal.' " *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 353 Ill. App. 3d 197, 213 (2004), quoting *McCleary v. Board of Fire & Police Commissioners*, 251 Ill. App. 3d 988, 995 (1993). We further note that section 36—2(a), which governs forfeiture hearings, provides that "[t]he State shall show at such hearing by a preponderance of the evidence, that such *** vehicle *** was used in the commission of an offense described in Section 36—1." 720 ILCS 5/36—2(a) (West 2002). There is no question that the State made this showing. Accordingly, we find no procedural infirmity mandating reversal of the forfeiture judgment.

880

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY, P.J., and GROMETER, J., concur.